UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.

BRIANNA GEPPERT,

      Plaintiff,

vs.

THE SHORELINE CLINIC, LLC, a
Florida Limited Liability Company, and
JASON IPO, individually,

      Defendants.

_____/

## COMPLAINT

Plaintiff BRIANNA GEPPERT ("Geppert" or "Plaintiff") by and through her undersigned counsel, files this Complaint against Defendants THE SHORELINE CLINIC, LLC., a Florida Limited Liability Company ("Shoreline" or "Defendant") and JASON IPO ("Ipo" or "Defendant") (collectively, "Defendants") and states as follows:

## NATURE OF THE ACTION

1.    This is a civil action seeking unpaid wages, unpaid overtime compensation, liquidated damages, compensatory damages, punitive damages, attorney's fees, costs, and injunctive relief arising from Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), unlawful retaliation, and unauthorized use of Plaintiff's name and likeness.

1

2.      Defendants engaged in a systematic pattern of wage theft and overtime violations affecting over twenty employees, manipulated employee time records to avoid paying overtime compensation, terminated Plaintiff in retaliation for complaining about workplace misconduct, refused to pay her final wages and overtime compensation, and continue to falsely represent her as a current employee on their business website despite her termination over one month ago.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 216(b).

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or conduct business in this District, and the events giving rise to this action occurred in this District.

## PARTIES

6.      Plaintiff BRIANNA GEPPERT is an individual residing in Sarasota County, Florida.

7. Defendant THE SHORELINE CLINIC, LLC is a Florida limited liability company with its principal place of business located at 235 Miami Ave W, Venice, FL 34285 in Sarasota County, Florida.

8. Defendant JASON CHANECO IPO is an individual who, at all times relevant hereto, was the owner, registered agent, manager, and operator of The Shoreline Clinic, LLC. He resides in Florida and exercised direct control over Plaintiff's employment, including hiring, firing, scheduling, wage payment, and day-to-day work conditions. He is sued individually and is an "employer" within the meaning of the FLSA.

9. At all times material hereto, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

## FACTUAL ALLEGATIONS

**Employment Relationship**

10. Plaintiff was employed by Defendants from January 23, 2024, through October 24, 2025.

11. Plaintiff's job duties included marketing management, certified personal training services, patient scheduling, administrative support, and other operational functions critical to Defendants' business operations.

12.     Plaintiff was classified as a non-exempt hourly employee paid at the rate of $30.00 per hour on a bi-weekly pay schedule.

13.     Plaintiff regularly worked more than 40 hours per week and was entitled to overtime compensation at one and one-half times her regular rate of pay for all hours worked, in excess of 40 hours per workweek.

14.     The Shoreline Clinic operates as a multi-specialty rehabilitation clinic offering physical therapy, occupational therapy, chiropractic services, interventional pain medicine, and neurology services to patients throughout Sarasota and Manatee Counties.

15.     Defendants were operating at multiple locations in Sarasota and Venice, Florida, maintain an active website offering online appointment booking, and regularly bill Medicare, commercial and private insurance companies for services rendered to patients[1].

16.     Defendants generated annual gross revenues of more than $500,000 and had between 15 and 30 or more employees during Plaintiff's employment.

17.     Defendants' business operations involve interstate commerce, including but not limited to: (a) purchasing medical equipment and supplies from out-of-state vendors; (b) billing and receiving payments from out-of-state insurance companies; (c) treating patients who travel from out of state; (d)

---

[1] Defendants were evicted for non-payment of rent from the Sarasota office location in July 2025.

maintaining a website accessible nationwide for appointment scheduling; (e) utilizing telecommunications and internet services that cross state lines.

**Pattern of Wage Theft**

18.    Throughout the course of Plaintiff's employment, Defendants engaged in a systematic, deliberate, and ongoing pattern of failing to pay employees on time, issuing bounced checks, making partial payments via personal Zelle transfers to avoid proper payroll processing, and ultimately failing to pay final wages upon termination.

20.    Upon information and belief, this pattern affected approximately twenty  or more current and former employees

19.    Defendants routinely failed to respond to or pay employees who submitted such complaints, demonstrating a deliberate policy of ignoring legal obligations to pay earned wages.

20.    On information and belief, Defendants have failed to provide W-2 forms to multiple employees for the 2024 tax year despite withholding taxes from employee paychecks.

21.    The failure to provide W-2 forms could potentially prevent former employees from filing their federal income tax returns and could cause them to incur penalties and interest from the Internal Revenue Service and Florida Department of Revenue.

22.    Defendants' pattern of wage theft was not isolated to Plaintiff but rather constituted a business practice affecting the entire workforce over an extended period of time.

**Overtime Violations and Time Manipulation**

23.    Throughout Plaintiff's employment and the employment of other staff members, Defendants engaged in a systematic practice of manipulating employee time records to avoid paying overtime wages required under the FLSA.

24.    Defendants routinely edited employee time entries in their timekeeping system to reduce the number of hours recorded, thereby artificially keeping employees' recorded hours at or below 40 hours per week even when employees actually worked significantly more hours.

25.    Defendants automatically or manually deducted lunch breaks of 30 to 60 minutes from employees' recorded time, even when employees worked through their lunch periods or when lunch breaks were interrupted with work duties requiring employees to respond to patient needs, administrative tasks, or other work-related matters.

26.    Employees, including Plaintiff, were required to remain available during purported lunch breaks and were frequently called upon to perform work duties during these periods, rendering the lunch breaks non-compliant with Department of Labor regulations for unpaid meal periods.

27.    Despite these time manipulations, Plaintiff and numerous other employees regularly worked in excess of 40 hours per week throughout their employment with Defendants.

28.    Defendants failed and refused to pay overtime compensation at one and one-half times employees' regular rates of pay for hours worked in excess of 40 hours per workweek, in direct violation of 29 U.S.C. § 207(a).

29.    On information and belief, Defendants' practice of time manipulation and failure to pay overtime wages affected substantially all non-exempt employees and resulted in systematic underpayment of wages across the workforce throughout the period of Plaintiff's employment and continuing to the present.

**Plaintiff's Unpaid Wages**

30.    During her final weeks of employment in October 2025, Plaintiff worked her regular schedule and properly documented her time through Defendants' timekeeping system.

31.    Plaintiff's paycheck for the pay period ending September 24, 2025, was never paid despite Plaintiff having worked all scheduled hours and properly submitted her time records.

32.    Plaintiff was terminated on October 24, 2025.

33.    Pursuant to Florida Statutes § 448.08 and Defendants' own policies, Plaintiff was entitled to receive her final paycheck, including all hours worked through her termination date, on or before November 7, 2025.

34.    Plaintiff's final paycheck was never paid.

35.    Plaintiff accrued paid time off (PTO) benefits during her employment in accordance with Defendants' written policies and her employment agreement. *See* employment agreement attached as Exhibit A.

36.    Upon termination, Plaintiff was entitled to payment for all accrued but unused PTO in the amount of $1,560.00, representing 52 hours of accrued PTO at her regular rate of $30.00 per hour.

37.    Defendants have failed and refused to pay Plaintiff's accrued PTO despite their written policy requiring payment of accrued PTO upon termination.

38.    Beginning in September 2025 and continuing through the present, Plaintiff made numerous requests to Defendants via email and text message for payment of her earned wages and PTO.

39.    Defendants acknowledged receipt of Plaintiff's requests but failed and refused to make payment.

40.    Prior to his hospitalization in late October 2025, Defendant Jason Ipo received multiple communications from Plaintiff requesting payment but did not respond substantively to any such requests.

41.    On October 29, 2024, Plaintiff sent a formal email to Defendant Ipo stating: "My paycheck in the amount of $1,940.04, which was due on October 24th, has not yet been received or communicated and is now five days past due. I would also like to confirm that my next paycheck, per my termination letter, will be due on November 7th."

42.    Defendants ignored this communication and have made no payments to Plaintiff despite clear acknowledgment of the amounts owed.

43.    Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked in excess of 40 hours per week.

44.    Plaintiff's actual work hours frequently exceeded 45 to 50 hours per week, particularly during periods of high patient volume, staff shortages, and special projects assigned by Defendant Ipo.

45.    Despite working these overtime hours, Defendants manipulated Plaintiff's time records by editing her submitted entries to reduce the recorded hours.

46.    Defendants also automatically deducted 30 to 60 minutes for lunch breaks from Plaintiff's recorded time on days when Plaintiff worked through lunch or was interrupted during lunch to perform work duties.

47.    As a result of these time manipulations, Plaintiff's paystubs reflected fewer hours than she worked, and Defendants avoided paying overtime compensation required under the FLSA.

48.    Plaintiff was never paid at the overtime rate of one and one-half times her regular rate ($45.00 per hour) for any hours worked more than 40 hours per workweek.

49.    Based on Plaintiff's review of her work schedule, calendar, and communications with Defendants regarding work assignments, Plaintiff estimates that she worked an average of 5 to 10 overtime hours per week throughout her employment.

50.    The exact amount of overtime hours worked by Plaintiff can be determined through discovery of Defendants' unedited time records, scheduling records, email communications, and other business records in Defendants' possession.

51.    Plaintiff has suffered significant financial hardship as a result of Defendants' failure to pay earned wages and overtime compensation, including inability to pay rent, utilities, and other necessary living expenses.

**Protected Activity and Retaliation**

52.    In or around mid-October 2025, Plaintiff became aware of and complained about inappropriate workplace conduct by Defendant Ipo that was creating a hostile and uncomfortable work environment.

53.    Specifically, Plaintiff expressed concerns to management about Defendant Ipo's alleged extramarital relationship with an employee he had hired, which was creating an uncomfortable and hostile work environment for Plaintiff and other staff members.

54.    The relationship between Defendant Ipo and the employee he hired created favoritism in the workplace, unequal treatment of employees, and an atmosphere of discomfort and unprofessionalism.

55.    Plaintiff voiced these concerns during the week of October 20, 2025, both verbally and in writing.

56.    Plaintiff's complaints constituted protected activity under the FLSA and Florida common law, as they related to workplace conditions, fair treatment of employees, and concerns about management conduct affecting the work environment.

57.    During Plaintiff's final week of employment (October 20-24, 2025), Defendant Ipo actively avoided Plaintiff, refused to answer her questions regarding patient care, ignored her attempts to communicate about work-related matters, and created a hostile work environment in response to her complaints.

58.     On October 24, 2025—within days of Plaintiff's complaints about workplace misconduct—Defendants terminated Plaintiff's employment.

59.     The termination letter, dated October 24, 2025, cited vague and pretextual reasons including "due to concerns related to team dynamics and operational needs."

60.     The stated reasons for termination were false, pretextual, and designed to conceal the true retaliatory motive for Plaintiff's discharge.

61.     Plaintiff had received no prior warnings, disciplinary actions, or negative performance reviews during her nearly two-year employment with Defendants.

62.     Plaintiff's work performance was satisfactory and often exemplary, as evidenced by her promotion to Marketing Manager and her assignment of critical business functions.

63.     The temporal proximity between Plaintiff's complaints (mid-October 2025) and her termination (October 24, 2025) establishes a clear causal connection between the protected activity and the adverse employment action.

64.     No legitimate business reason existed for Plaintiff's termination.

65.     Defendants stated reasons for termination were pretextual and designed to mask unlawful retaliation.

66.     Defendants terminated Plaintiff in retaliation for engaging in protected activity, specifically complaining about workplace misconduct and requesting payment of earned wages.

67.     As a direct and proximate result of Defendants' retaliatory termination, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, damage to her professional reputation, and other compensatory damages.

**Defendants' Fraudulent and Unlawful Business Practices**

68.     At all times material hereto, Defendant Jason Ipo held himself out to the public, patients, and employees as "Dr. Jason Ipo, DPT" (Doctor of Physical Therapy).

69.     Defendant Ipo's Florida Physical Therapist license (PT24832) reflects his qualification as a "Physical Therapist (PT)" only, not as a Doctor of Physical Therapy (DPT). *See* attached as Exhibit B.

70.     The designation "DPT" represents a specific doctoral-level degree in physical therapy that Defendant Ipo does not possess.

71.     As of the date of this Complaint, Defendant Ipo's physical therapy license is administratively suspended by the Florida Department of Health.

72.    The suspension of Defendant Ipo's license prohibits him from practicing physical therapy, treating patients, supervising physical therapy services, or holding himself out as a licensed physical therapist in the State of Florida.

73.    Despite his suspended license status, Defendant Ipo continues to be advertised on The Shoreline Clinic's website as "Dr. Jason Ipo, DPT – Founder/Physical Therapist." *See* website excerpts attached as Exhibit C.

74.    The practice of physical therapy with a suspended license constitutes a criminal violation of Florida law.  Pursuant to Florida Statutes § 456.065(2)(d), practicing a health care profession on a suspended, revoked, or void license is a felony of the third degree, which carries a mandatory minimum penalty of one year of incarceration and a $1,000 fine. Additionally, Florida Statute § 486.151(1)(b) specifically prohibits the use of a suspended or revoked license to practice physical therapy.

75.    On information and belief, Defendant Ipo has continued to treat patients, oversee patient care, supervise other physical therapists, and bill insurance companies for services rendered while his license has been suspended.

76.    Defendant Ipo has also falsely claimed to employees, and patients to hold a Master of Business Administration (MBA) degree from New York University, one of the nation's most prestigious business schools[2].

77.    These false credential claims appear prominently on The Shoreline Clinic's website and marketing materials and constitute fraudulent misrepresentation to the public, patients, insurance companies, and prospective employees[3].

78.    On information and belief, Plaintiff filed a complaint with the Florida Department of Health regarding Defendants' unlawful practices (Complaint No. 202556074).

79.    On information and belief, the Florida Department of Health is actively investigating Defendants' practices and the circumstances surrounding the suspension of Defendant Ipo's license.

---

[2] Plaintiff personally contacted the NYU Registrar's Office, which confirmed that no records exist for any "Jason Ipo" as a graduate or student of NYU's business school or any other program.

[3] Defendants have engaged in a pattern of healthcare fraud, including but not limited to (a)Billing insurance companies for services performed by an unlicensed practitioner;(b)representing to patients that the clinic accepts specific insurance plans when it does not;(c ) billing insurance at higher levels than services actually performed (upcoding);(d) Submitting claims for services not rendered;(e) billing for services performed by unlicensed or improperly supervised staff; and(d) misrepresenting the credentials and qualifications of providers to insurance companies and patients.

**Financial Distress and Asset Dissipation**

a)    Throughout 2024 and 2025, Defendants demonstrated ongoing financial distress and mismanagement, including, but not limited to: (a) eviction from a prior office location for failure to pay rent;(b )multiple bounced checks issued to employees for payroll;( c )failure to pay equipment vendors, including Sensopro; (d )use of personal Zelle transfers instead of proper payroll when funds were insufficient;(e )pattern of delayed, partial, or non-payment to employees despite operating an active business generating revenue;(f)Failure to pay utility bills, resulting in service interruptions;(g)failure to pay professional liability insurance premiums; and (h)accumulation of significant debt to multiple creditors.

80.    On January 3, 2024, The Shoreline Clinic, LLC experienced a "dissociation of member" event, indicating that a member or partner left the company around the time Plaintiff commenced employment.

81.    On information and belief, the dissociation of a member was related to financial disputes and concerns about Defendant Ipo's business practices.

82.    Despite claiming financial hardship and inability to pay employees, Defendants continued to: (a)purchase expensive equipment;(b)Advertise services through paid marketing campaigns;(c )Maintain an active patient scheduling system;(d )accept new patients;(e)bill insurance companies for services rendered;

(f) generate revenue from patient care; and (g) hire new employees and doctors and failed to pay any wages whatsoever.

83.    Defendants' failure to pay Plaintiff and other employees was willful and not the result of genuine inability to pay.

84.    Defendants made a deliberate business decision to prioritize other expenses over payment of earned wages to employees.

85.    Defendants' conduct demonstrates a reckless disregard for their legal obligations to pay employees for work performed.

**Unauthorized Use of Plaintiff's Name and Likeness**

86.    Following Plaintiff's termination on October 24, 2025, Defendants have continued to display Plaintiff's name, image, title, and credentials on The Shoreline Clinic's public-facing website at www.theshorelineclinic.com.

87.    As of January 20, 2026—almost three's after Plaintiff's termination—The Shoreline Clinic's "Team" webpage have displayed and continue to display: "Brianna Geppert, M.S. CPT – Marketing Manager/Certified Personal Trainer." *See* attached Exhibit D at p.7.

88.    This representation is false and misleading to the public, as Plaintiff is no longer employed by Defendants and has not consented to the continued use of her name, credentials, or likeness.

89.    Defendants' continued use of Plaintiff's name and credentials constitutes unauthorized commercial exploitation for the purpose of promoting their business and attracting patients.

90.    The false representation that Plaintiff remains employed by Defendants serves to:

a)    Enhance Defendants' credibility with prospective patients;

b)    Suggest that Defendants employ qualified professionals;

c)    Attract patients seeking personal training services;

d)    Create the false impression that Defendants operate a stable, well-staffed clinic; and

e)    Generate revenue for Defendants' business.

91.    Plaintiff has suffered harm to her professional reputation by being publicly associated with a business that is owned and operated by an individual with a suspended professional license; engages in fraudulent misrepresentation of credentials; engages in healthcare fraud; has a documented pattern of wage theft affecting over twenty employees; and operates in violation of Florida law.

92.    Plaintiff has demanded that Defendants remove her name, credentials, and any images from their website and all marketing materials.

93.    Defendants have ignored Plaintiff's demands and continue to use her name and credentials without authorization.

94.    Plaintiff has been contacted by former colleagues, patients, and professional contacts who have seen her name on Defendants' website and have questioned her continued association with the business.

95.    Plaintiff has suffered embarrassment, humiliation, and damage to her professional reputation as a result of Defendants' unauthorized use of her name and credentials.

**Willful Violations**

82.    Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a).

83.    Defendants knew or showed reckless disregard for whether their conduct violated the FLSA.

84.    Defendants' pattern of wage theft and overtime violations affecting over twenty employees demonstrates a knowing and deliberate policy of failing to pay wages earned.

85.    Defendants' systematic manipulation of employee time records demonstrates intentional conduct designed to avoid overtime obligations under the FLSA.

86.    Defendants' acknowledgment of unpaid wages, coupled with their continued refusal to make payment, establishes willfulness.

87.    Defendants' retaliation against Plaintiff for complaining about workplace misconduct was intentional, deliberate, and undertaken with knowledge that such conduct was unlawful.

88.    Defendants have been advised by multiple employees and former employees of their legal obligations but have chosen to ignore such advice.

89.    Defendants' conduct was not the result of mistake, inadvertence, or good faith error, but rather constituted a deliberate business decision to prioritize other expenses over payment of earned wages and overtime compensation.

## COUNT I
## FAILURE TO PAY WAGES AND OVERTIME IN VIOLATION OF THE FLSA
### (29 U.S.C. § 201 et seq.)

90.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

91.    At all times material hereto, Defendants were employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

92.    At all times material hereto, Plaintiff was an employee entitled to the protections of the FLSA.

93.    The FLSA requires employers to pay employees all wages earned, including final wages upon termination.

94.    The FLSA requires employers to pay non-exempt employees overtime compensation at a rate of not less than one and one-half times the regular rate of

pay for all hours worked in excess of 40 hours in a workweek, pursuant to 29 U.S.C. § 207(a).

95.    Plaintiff was a non-exempt employee entitled to overtime compensation under the FLSA.

96.    Throughout Plaintiff's employment, Defendants failed to pay Plaintiff overtime compensation for hours worked in excess of 40 hours per workweek.

97.    Defendants systematically manipulated Plaintiff's time records by editing her submitted entries and improperly deducting lunch breaks to avoid recording and paying overtime hours.

98.    Defendants' manipulation of time records was intentional, systematic, and designed to avoid their overtime obligations under the FLSA.

99.    Defendants failed and refused to pay Plaintiff earned wages and overtime compensation.

100.    Defendants' failure to pay these wages and overtime compensation violates the FLSA, 29 U.S.C. § 206 and § 207.

101.    Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

102.    As a result of Defendants' violations, Plaintiff has suffered damages in the amount of unpaid wages and overtime compensation and is entitled to an award of liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b).

103.    Plaintiff is entitled to recover her reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## UNLAWFUL RETALIATION IN VIOLATION OF THE FLSA
## (29 U.S.C. § 215(a)(3))

104.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

105.    Section 15(a)(3) of the FLSA prohibits employers from discharging or discriminating against employees who have complained about violations of the FLSA or other workplace misconduct.

106.    Plaintiff engaged in protected activity by complaining about inappropriate workplace conduct, including Defendant Ipo's relationship with an employee and the uncomfortable work environment it created.

107.    Plaintiff also engaged in protected activity by requesting payment of earned wages and questioning Defendants' payroll practices.

108.    Defendants were aware of Plaintiff's complaints.

109.    Within days of Plaintiff's complaints, Defendants terminated Plaintiff's employment.

110.    Defendants' stated reasons for termination were pretextual.

111.    The temporal proximity between Plaintiff's protected activity and her termination establishes a causal connection.

112.   Plaintiff's termination was in retaliation for engaging in protected activity.

113.   As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered lost wages, lost benefits, emotional distress, damage to professional reputation, and other compensatory damages.

114.   Defendants' retaliatory conduct was willful, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights.

115.   Plaintiff is entitled to compensatory damages, liquidated damages, and attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and § 215(a)(3).

## <u>COUNT III</u>
## FLORIDA COMMON LAW WRONGFUL TERMINATION/RETALIATORY DISCHARGE

116.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

117.   Florida law recognizes a cause of action for wrongful termination when an employee is discharged in retaliation for engaging in protected activity or for reasons that violate public policy.

118.   Plaintiff engaged in protected activity by complaining about inappropriate workplace conduct and requesting payment of earned wages.

119.   Defendants terminated Plaintiff in retaliation for engaging in such protected activity.

120.   Defendants' conduct violates Florida public policy protecting employees who report workplace misconduct and who assert their right to be paid for work performed.

121.   Florida has a strong public policy, embodied in Florida Statutes § 448.08 and other provisions, requiring employers to pay employees all wages earned.

122.   Florida has a strong public policy against retaliation for reporting workplace misconduct.

123.   As a direct and proximate result of Defendants' wrongful termination, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, damage to professional reputation, and other compensatory damages.

124.   Defendants' conduct was willful, wanton, malicious, oppressive, and undertaken with reckless indifference to Plaintiff's rights.

125.   Plaintiff is entitled to compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT IV
## UNAUTHORIZED USE OF NAME AND LIKENESS/MISAPPROPRIATION

126.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

127.　Plaintiff has a protectable property interest in her name, likeness, professional credentials, and identity.

128.　Following her termination on October 24, 2025, Plaintiff did not consent to and has not authorized Defendants' continued use of her name, credentials, or likeness for commercial purposes.

129.　Defendants' use of Plaintiff's name and credentials is for the purpose of promoting their business, attracting patients, and generating revenue.

130.　Defendants' unauthorized use of Plaintiff's identity constitutes commercial misappropriation under Florida common law.

131.　Plaintiff has been harmed by the continued association of her name and professional credentials with Defendants' fraudulent business practices.

132.　As a direct and proximate result of Defendants' unauthorized use of Plaintiff's name and likeness, Plaintiff has suffered damages including harm to professional reputation, emotional distress, and loss of control over her professional identity.

133.　Defendants' conduct was willful, intentional, and undertaken with knowledge that Plaintiff did not consent.

134.　Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief requiring immediate removal of her name and likeness from all Defendants' materials, and attorney's fees and costs.

## COUNT V
## VIOLATION OF FLORIDA STATUTE § 448.08
### (Failure to Pay Wages)

135.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

136.   Florida Statutes § 448.08 requires employers to pay employees all wages due on the regular payday designated by the employer.

137.   Florida Statutes § 448.08 further requires that when an employee is discharged, all wages or salary due must be paid upon discharge.

138.   Defendants violated Florida Statutes § 448.08 by failing to pay Plaintiff her earned wages on the designated paydays.

139.   Defendants violated Florida Statutes § 448.08 by failing to pay Plaintiff all wages due upon her discharge on October 24, 2025.

140.   As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages.

141.   Plaintiff is entitled to recover unpaid wages, attorney's fees, and costs pursuant to Florida Statutes § 448.08.

## COUNT VI
## BREACH OF CONTRACT

142.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

143.    Plaintiff and Defendants entered into an employment contract, either express or implied, whereby Plaintiff agreed to perform services for Defendants in exchange for compensation at the rate of $30.00 per hour, paid bi-weekly.

144.    The employment contract included provisions for accrual and payment of paid time off (PTO) upon termination.

145.    Plaintiff fully performed her obligations under the employment contract by working the hours assigned and performing her job duties satisfactorily.

146.    Defendants breached the employment contract by failing to pay Plaintiff the wages she earned.

147.    Defendants breached the employment contract by failing to pay Plaintiff her accrued PTO upon termination.

148.    Plaintiff is entitled to recover damages for breach of contract, attorney's fees, and costs.

## COUNT VII
## UNJUST ENRICHMENT

149.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

150.    Plaintiff conferred a benefit upon Defendants by performing valuable services, including marketing management, personal training, patient scheduling, and administrative support.

151.   Defendants accepted and retained the benefit of Plaintiff's services.

152.   Defendants have been unjustly enriched by retaining the benefit of Plaintiff's services without paying the compensation due.

153.   It would be inequitable and unjust for Defendants to retain the benefit of Plaintiff's services without paying for them.

154.   Plaintiff is entitled to recover the reasonable value of the services she provided.

## COUNT VIII
## QUANTUM MERUIT

155.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 89 as if fully set forth herein.

156.   Plaintiff performed valuable services for Defendants at Defendants' request.

157.   Defendants accepted the benefit of Plaintiff's services with the reasonable expectation that Plaintiff would be compensated.

158.   Defendants have failed and refused to pay Plaintiff for the services rendered.

159.   Plaintiff is entitled to recover the reasonable value of her services under the doctrine of quantum meruit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BRIANNA GEPPERT respectfully requests that this Court enter judgment in her favor and against Defendants THE SHORELINE CLINIC, LLC and JASON CHANECO IPO, jointly and severally, as follows:

A. Unpaid wages and overtime compensation as may be proven at trial;

B. Liquidated damages in an amount equal to unpaid wages and overtime compensation pursuant to 29 U.S.C. § 216(b);

C. Compensatory damages for lost wages, lost benefits, emotional distress, harm to professional reputation, and other damages in an amount to be determined at trial;

D. Punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future;

E. Prejudgment and post-judgment interest at the maximum rate permitted by law;

F. Reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b), Florida Statutes § 448.08, and other applicable law;

G. Injunctive relief requiring Defendants to immediately remove Plaintiff's name, credentials, and likeness from all websites, marketing materials, and other publications;

H. Such other and further relief as this Court deems just and proper.

Dated this 20th day of January 2026

Respectfully submitted,

*/s Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No.: 0085476
RICHARD CELLER LEGAL, P.A.
7951 SW 6th Street,  Suite 316
Plantation, FL 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-mail:
**noah@floridaovertimelawyer.com**

*Counsel for Plaintiff*