UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIANNA GEPPERT,

Plaintiff,

v. Case No. 8:26-cv-157-WFJ-SPF

THE SHORELINE CLINIC, LLC,
a Florida Limited Liability Company, and
JASON IPO, individually,

Defendants.
_______________________________________/

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiff Brianna Geppert's Motion for Default Final Judgment (Doc. 25). For the reasons stated here, the undersigned recommends granting the motion.

## I. BACKGROUND

Plaintiff Brianna Geppert worked for Defendant The Shoreline Clinic, LLC from January 23, 2024, through October 24, 2025, as a marketing manager, certified personal trainer, patient scheduler, and administrative support specialist, among other roles (Doc. 1 ("Cmplt.") at ¶¶ 10-11). The Shoreline Clinic is a multi-specialty rehabilitation clinic with locations in Venice and Sarasota, Florida (*Id.* at ¶ 14).[1] Defendant Jason Ipo is the clinic's registered agent, manager, and operator (*Id.* at ¶ 8). Defendants employed between 15 and 30 employees during Plaintiff's tenure and generated annual gross revenues exceeding $500,000 (*Id.* at ¶ 16). Defendants engaged in interstate commerce: their operations involved purchasing medical equipment and supplies from out-of-state vendors, billing and

[1] Defendants were evicted from their Sarasota location in July 2025 due to nonpayment of rent (Cmplt, at ¶ 15, n.1).

receiving payments from out-of-state insurance companies, treating patients who traveled from out-of-state, maintaining a website accessible nationwide for appointment scheduling, and utilizing telecommunications and internet services that cross state lines (*Id.* at ¶ 17). Plaintiff's job duties were critical to these operations (*Id.* at ¶ 11).

Plaintiff executed a written employment contract with Defendant Ipo stating her starting salary was $30 per hour (*Id.* at ¶¶ 143-44 and Ex. A). She was entitled to 80 hours of paid time off per year (*Id.*). Defendants classified Plaintiff as a non-exempt hourly employee and paid her on a biweekly basis (*Id.* at ¶ 12). Plaintiff claims she regularly worked more than 40 hours per week "particularly during periods of high patient volume, staff shortages, and special projects assigned by IPO." (*Id.* at ¶ 13).

Defendants terminated Plaintiff's employment on October 24, 2025, within days of Plaintiff voicing concerns to management about Defendant Ipo's romantic relationship with a coworker and the uncomfortable work environment this created (*Id.* at ¶ 106). She also complained to Defendants about unpaid wages (*Id.* at ¶ 66). On January 20, 2026, Plaintiff sued Defendants, asserting eight causes of action, including unpaid overtime wages and retaliation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), wrongful termination, unauthorized use of name and likeness, failure to pay wages, breach of contract, unjust enrichment, and quantum meruit (Doc. 1). Plaintiff declares that Defendants "never paid at the overtime rate of one and one-half times my regular rate ($45.00 per hour) for any hours I worked over forty (40) in a workweek. Instead, Defendants paid me straight time ("Regular") for all hours, including overtime hours."

(Doc. 25-1 ("Geppert Decl.") at ¶ 11). She also alleges that Defendants failed to issue her last two paychecks and failed to pay her for accrued PTO (*Id.* at ¶¶ 15-21).

Plaintiff served Ipo with a copy of the Summons and Complaint on March 11, 2026 (Doc. 9), and after one failed attempt, she served The Shoreline Clinic on April 21, 2026 (Doc. 15). Defendants' deadlines for responding to the Complaint were April 1, 2026, and May 12, 2026, respectively. *See* Fed. R. Civ. P. 12(a)(1)(A). Neither Defendant responded. On April 29, 2026, Plaintiff moved for a clerk's default against Defendant Ipo under Rule 55(b)(1) (Doc. 12), and the Clerk entered a default the next day (Doc 14). On May 14, 2026, Plaintiff moved for a clerk's default against Defendant The Shoreline Clinic (Doc. 16); the Clerk entered a default the same day (Doc. 18).

Under Rule 55(b)(2), Plaintiff now seeks a final default judgment against both Defendants on Count I (unpaid overtime and liquidated damages under the FLSA), Count II (retaliation under the FLSA), and Count VI (breach of contract for failing to pay wages earned and failing to pay accrued PTO) (Doc. 25). Plaintiff agrees to dismiss her remaining counts without prejudice (*Id.* at 2). Attached to Plaintiff's motion is her declaration detailing the hours she worked, the wages she earned, and the wages she is still owed (Doc. 25-1); a schedule of damages that charts the amount Defendants owe Plaintiff count-by-count (Doc. 25-2); and an affidavit from a legal assistant at the Servicemembers Civil Relief Act Centralized Verification Service testifying that Defendant Ipo is not an active duty servicemember (Doc. 25-3).

Plaintiff estimates that, during her tenure with Defendants, she worked 7.5 hours of overtime every week for 91 weeks, for which she was paid her regular hourly rate rather

than her overtime rate (Geppert Decl. at ¶ 12). She also alleges that Defendants withheld her last two paychecks and failed to pay out her unused PTO (52 hours) (*Id.* at ¶¶ 15-22). Finally, due to Defendants' retaliatory termination of Plaintiff, she alleges she was without employment income from October 24, 2025 (her termination date) through January 19, 2026 (when she secured comparable employment) (*Id.* at ¶¶ 25-27).

All in, Plaintiff claims $54,754.71 in total damages as follows: $10,237.50 in unpaid overtime under the FLSA, and an equal amount in liquidated damages; $14,400.00 in lost back pay for Defendants' retaliation in violation of the FLSA, and an equal amount in liquidated damages; $3,919.71 in unpaid wages; and $1,560.00 in unpaid, accrued PTO under Florida common law (*see* Doc. 25-2). Plaintiff does not seek attorney's fees or costs at this juncture.

## II. STANDARD OF REVIEW

A court may enter a default judgment against a party who has failed to respond to a complaint if the complaint provides a sufficient basis for the judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted). As such, if well-pleaded, liability is established by virtue of a default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). However, before entering a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings

for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007).

Damages, however, are not admitted by virtue of default. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). It is the Court that determines the amount and character of damages. *Id*. Damages to be awarded by default judgment may be assessed "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is not necessary if sufficient evidence is submitted to support the request for damages).

## III. DISCUSSION

### A. Personal Jurisdiction

The first step is to verify that Plaintiff effectively served Defendants under Rule 4. Without effective service, there is no jurisdiction and no obligation to answer or "otherwise defend." *See Kelly v. Florida*, 233 F. App'x 883, 885 (11th Cir. 2007); *Rajotte v. Fabco Metal Products, LLC*, No. 6:12-CV-372-ORL-28, 2012 WL 6765731 (M.D. Fla. Dec. 13, 2012), *report and recommendation adopted*, 2013 WL 57722 (M.D. Fla. Jan. 4, 2013) (denying motion for default judgment without prejudice due to improper service). Put differently, a federal court lacks personal jurisdiction over a defendant if service of process is insufficient. *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also In re Worldwide Web Sys.,*

*Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment.").

Here, the Court denied Plaintiff's initial motion for a Clerk's entry of default against Defendant The Shoreline Clinic due to insufficient service of process (Doc. 11). Plaintiff re-served the clinic in accordance with Rule 4 and moved again for a Clerk's default. In granting Plaintiff's motions for clerk's default, the undersigned analyzed service of process on each Defendant and found it sufficient (*see* Docs. 13, 17); personal jurisdiction exists.

B. *Liability*

**1. FLSA, Unpaid Overtime**

In Count I of her Complaint, Plaintiff alleges Defendants knowingly, willfully, and in reckless disregard for her rights, failed to pay her overtime wages in violation of the FLSA (Cmplt. at ¶¶ 90-103). "The FLSA requires employers who meet its preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours per week." *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 207(a)(1)). "A plaintiff claiming unpaid wages under the FLSA must demonstrate the following: (1) the defendant employed the plaintiff; (2) the plaintiff engaged in interstate commerce or that the defendant is an enterprise engaged in interstate commerce; and (3) the defendant failed to pay the plaintiff a minimum wage or overtime compensation." *Lozano v. Datereybru Co., LLC*, No. 6:19-cv-1783-CEM-LHP, 2022 WL 2317459, at *3 (M.D. Fla. Apr. 7, 2022) (citations omitted), *report and recommendation adopted*, 2022 WL 2802945 (July 18, 2022).

Plaintiff meets these elements based on the allegations in her Complaint, which the Court deems admitted. First, Defendants employed Plaintiff beginning in January 2024 (Cmplt. at ¶ 10). Second, Defendants are employers engaged in commerce (*i.e.*, enterprise coverage), and Plaintiff regularly engaged in commerce during her employment with Defendants (*i.e.*, individual coverage) (*Id*. at ¶¶ 8-9). Third, Plaintiff worked more than 40 hours per week for Defendants but did not receive overtime compensation (*Id.* at ¶¶ 16-26). Plaintiff is entitled to a default judgment as to Defendants' liability for Count I, unpaid overtime wages under the FLSA.

**2. FLSA, Retaliation**

In Count II, Plaintiff alleges Defendants terminated her employment because she complained to management about payroll practices and requested payment of earned wages (*Id*. at ¶¶ 52-67, 104-15). The FLSA prohibits discharging an employee for complaining about fair treatment and unpaid wages. *See* 29 U.S.C. § 215(a)(3). To establish a claim for retaliation under the FLSA, Plaintiff must show: "(i) she engaged in activity protected under the act; (ii) she subsequently suffered adverse action by the employer; and (iii) a causal connection existed between the employee's activity and the adverse action." *Smith v. Haynes & Haynes, P.C.*, 940 F.3d 635, 648 (11th Cir. 2019) (quoting *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000)).

Plaintiff alleges that in mid-October 2025, she "became aware of and complained about inappropriate workplace conduct by Defendant Ipo that was creating a hostile and uncomfortable work environment." (Cmplt. at ¶ 52). She "complain[ed] about workplace misconduct and request[ed] payment of earned wages" and expressed these concerns to

management during the week of October 20, 2025, "both verbally and in writing." (*Id*. at ¶¶ 66, 55). Defendants terminated Plaintiff on October 24, 2025, within days of her complaints about workplace misconduct and unpaid wages (*Id*. at ¶ 66). Up until her termination, Plaintiff had received no prior warnings, disciplinary actions, or negative performance reviews (*Id*. at ¶ 61).

From October 24, 2025, until she secured comparable employment on January 19, 2026, Plaintiff had no earnings and did not receive unemployment compensation, despite applying for it (*Id*. at ¶ 67; Geppert Decl. at ¶ 26). The unemployment office in Sarasota County (the county where Plaintiff worked and the clinic had its principal place of business) told Plaintiff "there was no record of [her] employment at The Shoreline Clinic in the system." (Geppert Decl. at ¶ 26). In the absence of opposition, Plaintiff is entitled to a default judgment on Count II.

### 3. Breach of Contract (Unpaid Wages and PTO)

In Count VI, Plaintiff alleges breach of contract under Florida law (Cmplt. at ¶¶ 142-48). Unpaid wage claims under Florida common law can be based either on an employment relationship between the parties or an express contractual agreement. *See Barfield v. APRO Int'l, Inc.*, No. 8:16-cv-814-T-35MAP, 2017 WL 6947417, at *3 (M.D. Fla. Oct. 27, 2017) (citations omitted). "[A]ctions for unpaid wages are typically pled as breach of contract claims wherein the agreement in question happens to be an employment or compensation contract." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009). Here, Plaintiff pleaded that she was employed by Defendants beginning in January 2024, that Defendants agreed to pay her $30.00 per hour and to pay for accrued PTO, and that

Defendants failed to pay her for all hours worked and accrued, unused PTO as of her termination date in October 2025 (Cmplt. at ¶¶ 142-48). This is sufficient to state a claim for breach of employment contract under Florida law. In the absence of opposition, the Court finds that Plaintiff is entitled to a default judgment on Count VI.

C. *Damages*

It is well-recognized that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes … an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Here, Plaintiff's Complaint (Doc. 1), the employment contract (Doc. 1, Ex. A), Plaintiff's declaration (Doc. 25-1), and the schedule of damages submitted with her motion for default judgment (Doc. 25-2) sufficiently demonstrate the amount and extent of the work she performed and provide an adequate basis for calculating her damages as to each count. *See, e.g., Wallace v. The Kiwi Grp.*, 247 F.R.D. 679, 682 (M.D. Fla. 2008) (finding plaintiffs' affidavits sufficient evidence for calculating FLSA damages).

**1. FLSA Claims**

**a. Unpaid Overtime**

Plaintiff is entitled under the FLSA to compensation at one and one-half times her regular pay rate for all hours worked more than 40 during a work week. 29 U.S.C. § 207(a)(1); *see Wallace v. the Kiwi Grp., Inc.*, 247 F.R.D. 679, 683 (M.D. Fla. 2008). Plaintiff's

regular pay rate during her employment with Defendants was $30.00 per hour, putting her overtime rate at $45.00 ($35.00 x 1.5). Plaintiff declares that she worked 7.5 hours of overtime per week for 91 weeks but was paid at her regular hourly rate for these hours, not her overtime rate (Geppert Decl. at ¶ 12). Accordingly, the undersigned can reduce Plaintiff's damages to a sum certain based on the information provided. The Court calculates Plaintiff's unpaid overtime under the FLSA as follows: (7.5 hours x 91 weeks) x $15.00 (unpaid overtime premium) = $10,237.50.

The undersigned recommends that Plaintiff receive $10,237.50 as unpaid overtime damages.

**b. Retaliation**

Upon establishing a claim for retaliation under the FLSA, 29 U.S.C. § 215(a)(3), an employer is "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Roth v. ABCW, LLC*, No. 2:14-cv-227-FtM-29CM, 2016 WL 6994178, at *3-4 (M.D. Fla. Nov. 30, 2016).

Here, Plaintiff alleges she did not receive unemployment benefits despite applying for them but found comparable employment on January 19, 2026. Approximately 12 weeks passed between her termination date of October 24, 2025, and the start of her new job. At $30 per hour for 40 hours per week, Plaintiff is entitled to $1,200 per week for 12 weeks of

unemployment, or $14,400.00 in lost wages for Defendants' violation of the FLSA's anti-retaliation provision.[2]

**c. Liquidated Damages**

Regarding the FLSA's overtime (and minimum wage) provisions, "employees who prevail under the FLSA are entitled to recover liquidated damages unless the employer makes an affirmative showing that it acted in good faith." *Aparicio v. Mar Tile Design Corp.*, No. 6:24-cv-420-PGB-LHP, 2024 WL 5293784, at *8 (M.D. Fla. Nov. 22, 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 5293774 (M.D. Fla. Dec. 17, 2024). *See also* 29 U.S.C. § 216(b); *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1573 (11th Cir. 1988). In contrast, unlike the FLSA's overtime and minimum wage provisions, liquidated damages under the anti-retaliation provision are discretionary in the Eleventh Circuit. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1242-43 (11th Cir. 2013). There is no requirement that the employer show good faith to avoid liquidated damages, as there is with overtime and minimum wage claims. *Id*. at 1241-43. As to FLSA retaliation counts, the Eleventh Circuit has specified that § 216(b) "gives the district court discretion to award, or not to award, liquidated damages, after determining whether doing so would be appropriate under the facts of the case." *Id.*; *see also Bernard v. Integrated Event and Parking Servs. LLC*, No. 24-81384-CIV-DIMITROULEAS, 2026 WL 2170492, at *3 (S.D. Fla. Jan. 28, 2026).

Here, by failing to answer the Complaint, Defendants admit that they acted willfully and not in good faith in failing to pay Plaintiff's wages for the hours at issue. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282 (11th Cir. 2008) (stating that "the district

[2] Importantly, Plaintiff's request for lost wages does not include overtime wages.

court has discretion to reduce or deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA") (quotations and alterations omitted); *see also Miller*, 75 F. Supp. 2d at 1346 (noting that "[b]y virtue of its default, [defendant] has admitted a wil[l]ful violation . . . and the Court is precluded from finding good faith"). Regarding Plaintiff's retaliation claims, Defendants admit (by virtue of default) that their stated reasons for terminating Plaintiff were pretextual and that they actually terminated her because she engaged in protected activity under the FLSA. Upon consideration of Plaintiff's allegations, deemed admitted, the undersigned recommends that the Court award Plaintiff liquidated damages equal to her unpaid overtime under the FLSA ($10,237.50) and that the Court exercise its discretion to award Plaintiff liquidated damages in an amount equal to her lost wages related to Defendants' unlawful retaliation ($14,400.00).

**2. Breach of Contract**

Under Florida law, Plaintiff is entitled to her unpaid wages and accrued PTO at the agreed-upon hourly rate of $30.00. Plaintiff alleges she was owed a paycheck for $1,940.04 for the pay period ending October 10, 2025 (due on October 24, 2025) (Geppert Decl. at ¶ 15). Defendants never paid this check. Plaintiff also alleges she was owed $1,979.40 for the pay period ending on her termination date of October 24, 2025 (due on November 7, 2025, and never paid) (*Id.* at ¶ 16). The total amount owed to Plaintiff for unpaid wages is $1,940.04 + $1,979.40 = $3,919.71.

Additionally, under the employment agreement (Cmplt., Ex. A) and Defendants' PTO policy (*see* Cmplt. at ¶ 35), Plaintiff's accrued, unused PTO was due to her upon her termination. As of October 24, 2025, Plaintiff had accrued 52 hours of unused PTO (Geppert Decl. at ¶ 21). Plaintiff is owed 52 hours x $30 per hour = $1,560.00 in unused PTO. The undersigned recommends that Plaintiffs receive a total of $5,479.71 as unpaid wages and accrued, unused PTO for Defendants' breach of contract.

### 3. Attorney's Fees and Costs

The FLSA authorizes an award of reasonable attorney's fees and costs to parties who prevail on claims to enforce the provisions of the FLSA. *See* 29 U.S.C. § 216(b). The same is true for an action for unpaid wages under Florida law. *See* Fla. Stat. § 448.08; *Palmer v. JBS Trans LLC*, No. 3:22-cv-1315-HLA-PDB, 2023 WL 5933357, at *6 (M.D. Fla. Aug. 10, 2023). Nonetheless, Plaintiff states that she is not seeking fees and costs against Defendants at this time.

## IV. CONCLUSION

It is **RECOMMENDED:**

1. Plaintiff's Motion for Default Final Judgment (Doc. 25) on Counts I, II, and VI of her Complaint be granted.
2. Plaintiff's remaining claims (Counts III, IV, V, VII, and VIII) be dismissed without prejudice.
3. Plaintiffs be awarded $54,754.71 against Defendants, jointly and severally, as follows: unpaid overtime compensation in the amount of $10,237.50, and an equal amount in liquidated damages (Count I); $14,400.00 in lost wages, and

an equal amount in liquidated damages (Count II); and $5,479.71 in unpaid wages (Count VI); and

4. The Court direct the Clerk to close the case.

**IT IS SO REPORTED** in Tampa, Florida, on September 23, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.